THE STATE, EX REL. THE NEWARK AND NEW YORK RAIL-ROAD COMPANY, v. JAMES E. GOLL.

The secretary of the Newark and New York Railroad Company bought a set of books with his own funds, and entered in them the minutes of the proceedings of the corporators, and received in them the subscriptions of stock—*held,* that the possession of the secretary was the possession of the company ; that in going out of office the secretary had no right to take the books with him ; that he had no lien on the books either for the purchase money, or for his services as secretary, or for the use and occupation of his premises by the company, while he was secretary, and that the company were entitled to a peremptory *mandamus.*

---

In matter of *mandamus.*

Upon application to the court, at the November Term of 1866, by the relators in this case, leave was given them to issue an alternative *mandamus,* directed to James E. Goll, the defendant, and commanding him immediately to deliver to the relators certain books, records, and papers in his possession, belonging to the said relators, or show cause at the next term of the court why he has not done so.

The writ was accordingly issued, and is as follows :

New Jersey, *ss.*—The State of New Jersey to James E. Goll, greeting :—Whereas, it has lately been represented to our justices of our Supreme Court of Judicature, on the

VOL. III.                    s

part and behalf of the Newark and New York Railroad
Company, that you, the said James E. Goll, were by the cor-
porators of the said the Newark and New York Railroad
Company, soon after the passage of the act entitled "an act
to incorporate the Newark and New York Railroad Com-
pany," approved March 1st, 1866, appointed secretary of
said corporators, and that you, the said James E. Goll, con-
tinued to act as such secretary, until a board of directors of
said company was duly elected by the stockholders thereof,
and duly organized, to wit, on the first day of June last; and
that you, the said James E. Goll, before and at the said
time of the organization of the said board of directors of
the same company, held in your hands certain books, records,
and papers belonging to the said company, consisting,
amongst others, of the books of minutes of the proceedings
of the said corporation and stockholders and directors, and
the subscription book, containing the signatures of the sub-
scribers to the capital stock of said company, and their
subscriptions to said stock, and the receipt books of the said
company; that you, the said James E. Goll, after the or-
ganization of said board of directors of said company, re-
fused to deliver up the said books, records, and papers to the
said company, and that from that time to the present time,
you have kept the said books, records, and papers, and have
refused to deliver them up, and still keep them, and refuse
to deliver them to the said company, or their board of direct-
ors, although the same have been demanded of you by the
said company; and that you, the said James E. Goll, also
refuse to disclose or inform the said company where you
have placed the said books, records, and papers, and where
you keep the same, although the said company have fre-
quently, by their officers, requested you, the said James E.
Goll, to inform them where the same are kept by you;
whereupon, we being willing that due and speedy justice
should be done in the premises, do command you, that im-
mediately after receiving this our writ, you, the said James
E. Goll, do deliver up to the said the Newark and New
York Railroad Company, the said books, records, and papers

of the said company, or that you show cause in our Supreme Court of Judicature, before our said justices thereof, on the fourth Tuesday of February next, why you have not done the same.

Witness MERCER BEASLEY, esq., our Chief Justice, at Trenton, the twenty-sixth day of November, in the year of our Lord one thousand eight hundred and sixty-six.

CHAS. P. SMITH, <em>Clerk.</em>

T. P. RANNEY, <em>Attorney.</em>

To which said writ (service of the same having been duly acknowledged) the said James E. Goll made the following answer and return :

To the honorable the justices of the Supreme Court of Judicature of the state of New Jersey :

James E. Goll, of the city of Newark, for return to the writ of alternative *mandamus*, heretofore issued by this court against him, on application made by " the Newark and New York Railroad Company," says :

That it is true that he was duly appointed secretary of said company, to wit, on the sixth day of March, one thousand eight hundred and sixty-six, and that he acted as such secretary from that time until the fifteenth day of May, in the same year, but he denies that he hath or ever held in his hands any books, records or papers belonging to said company, containing the minutes of the proceedings of the meetings of said corporators of said company, or of its stockholders or directors, or any book belonging to said company, containing the signatures of the subscribers to the capital stock of said company, and the receipt books of the said company. He admits that he has in his possession books, one in which he hath himself written the minutes of the proceedings of the meeting of the said corporators, and of the same stockholders and directors, and another in which are contained the signatures of the subscribers to the capital stock of said company, and their subscription to said stock,

and the receipt books of said company; but the respondent says, that each of these books is his own property—was purchased by him, with his own money, and that he has expended in said purchase the sum of one hundred and fifty dollars; and further, the respondent says, that even if the said company had a right to said books, or any of them, which he denies, he hath a right to the custody and possession thereof, as security to himself for certain moneys due him from said company, to wit, for the cost of said books, one hundred and fifty dollars; for this deponent's services, as secretary, the sum of seven hundred and fifty dollars; for use and occupation of respondent's premises, by said corporators, directors, and stockholders, the sum of one hundred dollars. And the respondent insists that until he is paid what is due him, as aforesaid, he cannot legally be required to deliver up said books.

And this respondent further says, that the said company have no right to a writ of *mandamus* in this matter, because there is a sufficient remedy against this respondent for any wrong he has done said company otherwise, either by writ of replevin, action in trover, or bill of discovery in equity, to answer all or any of which respondent is fully capable, pecuniarily.

And this respondent prays that such order may be made in the premises as is lawful and right, and that the respondent may be hence dismissed, with his reasonable costs, most wrongfully sustained.

JAMES E. GOLL.

February 26, 1867.

The writ and return having been brought into court, *C. S. Titsworth* and *C. Parker*, on the part of the defendant, moved that the writ be quashed, because

1. That the matters set out in the writ are only set out by way of recital, and not by positive averment.

2. That it is not positively averred that the relators have no other legal remedy.

State, ex rel. Newark & N. Y. R. Co., v. Goll.

*T. P. Ranney* and *T. N. McCarter*, on the part of the relators, insisted—

1. That the writ was in the usual form, and showed sufficient ground to warrant the court in proceeding by *mandamus*, which was the only effective remedy.

2. That the return to the writ showed no proper cause why a peremptory *mandamus* should not issue, and should, therefore, be quashed.

The cause was heard before Justices ELMER, VREDENBURGH, and WOODHULL.

The opinion of the court was delivered by

VREDENBURGH, J.   A rule was granted by this court, in November Term, 1866, to the relators, for leave to issue an alternative *mandamus*, commanding the defendant immediately to deliver up to the relators the books, records and papers of the said relators, or show cause at this term why he should not have done so.

The said writ being now here, the defendant moves to quash it.

It is alleged that the writ itself contains no allegations to warrant its issuing.   But the writ does show, by way of recital, that the defendant was the acting secretary of the relators, from soon after the first of March, 1866, and continued so to act until first of June, following, and held in his hands, as such secretary, the books, records, and papers belonging to them, amongst others the book of minutes of the proceedings of their meetings, the subscription books, containing the signatures of the subscribers to the capital stock, and their subscriptions to said stock, and the receipt books of the relators, and that the defendant refused to deliver up to them the said books and papers, and still keeps them, although they have been demanded, and that the defendant refuses to inform the relators where the said books, records, and papers are, although frequently requested.

It is complained, *first*, that all these are by way of recital, and not by positive averment.   But this is conformable to

all the forms of alternative *mandamus* I have seen. These facts are, or are supposed to be, shown affirmatively to the court, to their satisfaction, upon the application for the alternative *mandamus*. The court will not usually grant the rule until they are satisfied upon these points; and upon being so satisfied they grant the rule. It is all sufficient, therefore, that these facts appear in the alternative *mandamus*, by way of recital. If there is any further dispute as to their existence, the question should be raised by the return.

It is next contended, that it should appear by positive averment, or by way of recital, that the relators have no other legal remedy.

It is, indeed, laid down in *Tapping on Mandamus, p.* 768, that the writ should allege that the relators cannot have redress by the ordinary legal remedies. But the authorities referred to do not support so broad an assertion. They go no further than to decide that the writ must show, by necessary implication that there is no other legal remedy.

In this case, the facts stated in the writ show that there is no other specific legal remedy. What other remedy is there? Trover or replevin will not bring the books, and any proceeding in chancery restoring the books would only be a *mandamus* issued out of chancery, instead of out of the king's bench.

The recitals in the writ show that the defendant was the secretary of the relators, and, as such, had the keeping of their books and papers. These they have demanded of him, and he refused to surrender. These facts are of themselves sufficient to entitle the relators to the writ. The corporation are the relators—the secretary is the secretary of the corporation. It is the corporation that, by the writ, demands the books from its secretary. Neither the gentlemen who are named corporators, or the stockholders, or the directors, are before the court. The question before us is simply one between the corporation, as a body politic, and their secretary. As against it, his only duty is, upon demand, to deliver

to them their books. Whatever difficulties there may be as to whether the relators are a corporation, or whether the directors are properly chosen, or as to who shall have the books, the original corporators or the directors, should be raised by the return. The defendant is not in a condition to raise them by way of motion to quash.

If the writ shows, by way of recital, a case showing in the relators a right, as against the defendant, to the books, the writ will not be quashed.

The next question is as to the return. The relators move to quash the return and for a peremptory *mandamus*.

In the return the defendant denies that he hath, or ever held any books, records, or papers belonging to the relators ; and if he had stopped there it would have been sufficient. But he goes on and qualifies this general denial, showing that by his general denial, he only intends to aver his conclusion of law from other facts that he admits.

He admits that he was duly appointed secretary of the relators, on the sixth of March, 1866, and acted as such until the fifteenth of May, 1866, and that he has in his possession books, one in which he hath himself written the minutes of the proceedings of the meeting of the corporators, and of the stockholders and directors, and another in which are contained the signatures of the subscribers to the capital stock, and the receipt books of the relators, but that each of these books is his own property, was purchased by him with his own money, and that he has expended on said purchase the sum of one hundred and fifty dollars, and that even if the said company had a right to said books, he hath a right to their custody, and possession thereof to himself, for moneys due him, for the said cost of the books, and seven hundred and fifty dollars for the defendant's services as secretary, and for the use and occupation of the defendant's premises, by said corporators, directors, and stockholders.

The reason, therefore, which the defendant gives why he considers these books his property, is that he paid for them himself, to the amount of one hundred and fifty dollars.

But he further says, he himself, as secretary of the relators, wrote, himself, therein the minutes of the proceedings of the corporators, of the stockholders, and directors; that another of these books contains the signatures of the subscribers to the capital stock of the said company, and their subscriptions to said stock, and the receipt books of said company. The defendant does not say that, as secretary, or otherwise, he has, or that there is, any other books containing the records of said company. These facts show, as a conclusion of law, that although the relators may owe the defendant for these books, yet that the books are the property of the relators, and were, as soon as the defendant, as secretary, began to put, or permit to be put in them, the minutes, subscriptions, and receipts of the relators, in the possession of and the property of the relators. The conclusion of law is that as secretary of the relators, he bought them for the relators, and looked to them for payment. As long as the defendant was secretary, and had these books with any records of the relators in them, put in them either by the defendant or by his permission, his possession was the possession of the company, and when he ceased to be secretary he had no right to take the books with him, any more than a merchant's clerk.

By putting these records in these books, the defendant so mixed his own property with the property of the company, that they could not be separated, and according to a well established principle of law, the whole property thereby became the property of the company.

The next claim presented by the defendant is, that he had a lien on these books for the purchase money. But according to the view we have taken, the possession of the defendant was the possession of the company, and so, of course, his lien was gone, and so it was also gone as soon as he mixed his own property with that of the company.

The next reason assigned by the defendant for not delivering the books is, that the company owed him seven hundred and fifty dollars for services, and for the use and occupation

of the defendant's land by said company. But I do not see how all this could give the defendant a right to seize these books and go away with them, when he ceased to be their secretary. This would be a remedy by the act of the party, much more extensive than I have ever known to be sanctioned.

The return ought to be quashed, and a peremptory *mandamus* issue.

Justices ELMER and WOODHULL concurred.

CITED in *O'Donnel* v. *Dusman,* 10 *Vroom* 677.